**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 75 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 906 MDA 2014 dated |
| | : | February 23, 2015 Affirming the Order |
| v. | : | of the Centre County Court of Common |
| | : | Pleas, Criminal Division, at No. CP-14- |
| | : | MD-0000836-2013 dated April 30, 2014. |
| VICTORIA C. GIULIAN, | : | |
| | : | |
| Appellant | : | ARGUED: April 6, 2016 |

## OPINION

**JUSTICE DOUGHERTY**                              **DECIDED: July 19, 2016**

We consider the statutory requirements for expungement of criminal history record information for summary convictions pursuant to 18 Pa.C.S. §9122(b)(3) and conclude the lower courts erred in holding expungement unavailable as a matter of law in this matter. We therefore reverse and remand.

Appellant Victoria C. Giulian, then twenty years old, was arrested on April 20, 1997, and ultimately pleaded guilty to the summary offenses of public drunkenness, 18 Pa.C.S. §5505, and harassment, 18 Pa.C.S. §2709(a)(1). At this same time, appellant was also charged with the misdemeanor offense of disorderly conduct, 18 Pa.C.S. §5503(a)(2), a charge later withdrawn, and the summary offense of underage drinking, 18 Pa.C.S. §6308(a), to which she pleaded guilty. Appellant was then arrested on September 27, 1998, and pleaded guilty to the summary offense of criminal mischief, 18 Pa.C.S. §3304.

Appellant has had no arrests since September 27, 1998. On May 8, 2013, appellant filed a petition seeking expungement of these summary convictions from her criminal history record under Section 9122(b)(3), which provides:

> **(b) Generally.**--Criminal history record information may be expunged when:
>
>                 *                *                *
>
> (3)(i) An individual who is the subject of the information petitions the court for the expungement of a summary offense and has been free of arrest or prosecution for five years following the conviction for that offense.
>
> (ii) Expungement under this paragraph shall only be permitted for a conviction of a summary offense.

18 Pa.C.S. §9122(b)(3).[1]

The Commonwealth did not object to expungement of the withdrawn disorderly conduct charge and the guilty plea conviction for underage drinking, and the record of these charges was expunged. The Commonwealth did oppose expungement respecting the other offenses, however. The Centre County Court of Common Pleas granted the petition with regard to the 1998 criminal mischief conviction, but denied expungement of the records relating to the 1997 public drunkenness and harassment convictions. The court acknowledged appellant was "conviction free for 16 years" after 1998, but determined appellant was not entitled to expungement of the earlier convictions because her 1998 arrest and plea meant she did not remain free of arrest or prosecution for "at least five years following the 1997 convictions" as required by subsection (b)(3)(i). Trial Court Opinion, 7/16/14, slip op. at 4.

---

[1] Subsection (b) also allows discretionary expungement when an individual "reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision," 18 Pa.C.S. §9122(b)(1), or "has been dead for three years." 18 Pa.C.S. §9122(b)(2).

Appellant filed an appeal to the Superior Court, which affirmed the trial court in a brief published decision. *Commonwealth v. Giulian*, 111 A.3d 201 (Pa. Super. 2015). The panel recognized penal statutes are to be strictly construed under the rule of lenity, with ambiguities resolved in favor of the defendant. *Id.* at 204. However, the panel considered the language of Section 9122(b)(3)(i) to be clear and unambiguous and held the language supported the trial court's reading of the term "free of arrest or prosecution for five years following the conviction." *Id.* The panel interpreted the statutory language as requiring appellant to remain free of arrest or prosecution for "the" five years "**immediately** following her conviction for the 1997 offense[s]," rather than for "**any**" five-year period following those offenses. *Id.* (emphases in original). In the panel's view, the reading proffered by appellant treated as surplusage the concluding statutory phrase, "following the conviction for that offense." *Id.*

Appellant filed a petition for allowance of appeal, and this Court granted review of the following question:

> Did the Superior Court commit an error of law in finding that the Petitioner was not statutorily eligible to have her summary convictions expunged pursuant to 18 Pa.C.S.A. § 9122(b)(3) despite the fact that Petitioner has been free of arrest and prosecution for more than sixteen years following the convictions, over ten years longer than the statutory requirement?

*Commonwealth v. Giulian*, 122 A.3d 1029 (Pa. 2015).

Appellant argues she is eligible to have the records of her 1997 summary convictions expunged because she has been free from arrest and prosecution for more than sixteen years following those convictions, over ten years longer than the five-year requirement set forth in Section 9122(b)(3)(i). Appellant asserts the Superior Court incorrectly read into the statute a requirement that the five arrest-free years be "immediately" following the conviction sought to be expunged, when the actual text of

the statute does not include that qualifier. Appellant claims courts should not add words or phrases when construing a statute unless the words are "necessary for a proper interpretation, do not conflict with the obvious intent of the statute, and do not in any way affect its scope and operation." Appellant's Brief at 11, *citing Commonwealth v. Segida*, 985 A.2d 871, 875 (Pa. 2009). Appellant points out the General Assembly has used "immediately following" in other statutes when it intends to qualify timing in this way, and thus the omission of the phrase from Section 9122(b)(3)(i) is telling. Appellant's Brief at 12, *citing, e.g.,* 18 Pa.C.S. §9143 (Office of Attorney General has power to promulgate guidelines for implementation of statute for period of "one year immediately following the effective date of this section").

In a second textual argument, appellant points to the absence of the definite article "the" to circumscribe the period referenced in Section 9122(b)(3)(i); she argues the Superior Court improperly supplied this limiting language to the statute when it interpreted it as requiring her to remain arrest-free for "the" five years "immediately following" the 1997 convictions. *Giulian*, 111 A.3d at 204. Appellant further stresses the Legislature's use of the present perfect tense — "has been free of arrest" — supports her interpretation that the statute does not refer to any particular five-year period, and that period can occur recently, as opposed to the Superior Court's conversion of the language, in the final paragraph of its opinion, to read "**was not** free of arrest or prosecution." *Id.* (emphasis added). Moreover, appellant argues, the Superior Court's concern that her reading renders the final phrase of the statute surplusage is misplaced because the words "following the conviction for that offense" are necessary

to establish the possible start date for any five-year waiting period, *i.e.*, the period begins **after conviction** for the summary offense.

According to appellant, even if Section 9122(b)(3) is ambiguous, it is a penal statute which must ordinarily be strictly construed, *see* 1 Pa.C.S. §1928(b)(1), and under the rule of lenity any ambiguity must be construed in her favor. *See Commonwealth v. Fithian*, 961 A.2d 66, 74 (Pa. 2008) (if ambiguity exists in penal statute it should be interpreted in light most favorable to accused; where doubt exists, accused should receive benefit of doubt). In the alternative, appellant argues exceptions to remedial legislation — such as this expungement provision — are narrowly construed against the Commonwealth, because such a statute should be "construed liberally to effectuate its humanitarian objectives." Appellant's Brief at 22, *quoting School Dist. of Phila. v. WCAB*, 117 A.3d 232, 242 (Pa. 2015).

Finally, appellant argues the General Assembly intended to allow rehabilitated individuals like herself to secure expungement of their minor summary citations, in order to achieve better access to jobs or housing, and so, to the extent there is an ambiguity, this Court should interpret the statute with this particular legislative intent in mind.[2]

---

[2] *Amici curiae* Juvenile Law Center, Homeless Advocacy Project, Defender Association of Philadelphia, X-Offenders for Community Empowerment, Pennsylvania Prison Society, Broad Street Ministry, Impact Services, and Resources for Human Development filed a brief in support of appellant, expanding on this particular argument involving the consequences of a narrowing interpretation of the availability of expungement. *Amici* posit that Section 9122(b)(3)(i) is ambiguous, and should be construed in favor of criminal defendants like appellant with low-level offenses, so they can overcome the substantial barriers created by a criminal record to finding employment or housing, or pursuing opportunities for higher education. *Amici* note research indicates individuals who are permitted to have their criminal records expunged or sealed are more likely to find jobs and less likely to be rearrested. *Amici* argue it is in the best interests of the citizens of the Commonwealth to allow low-level
(continued…)

Appellant claims the Superior Court's interpretation will produce absurd and unreasonable results, as it has here — where the record of the more recent summary citation was expunged while the older ones remain intact — and this cannot be the intent of the Legislature. *See, e.g.*, 1 Pa.C.S. §1922(1) (presumption that General Assembly does not intend absurd, impossible or unreasonable result); *Banfield v. Cortes*, 110 A.3d 155, 168 (Pa. 2015) (same).

Echoing the interpretation of the courts below, the Commonwealth responds that appellant's 1997 summary convictions cannot be expunged because she failed to remain free of arrest or prosecution for five years, due to her subsequent 1998 arrest and conviction. The Commonwealth claims the statute is clear and unambiguous in its meaning: "a defendant must be arrest or prosecution free for five years immediately following the conviction for the offense she wishes to expunge." Appellee's Brief at 8. The Commonwealth agrees Section 9122(b)(3) is a penal statute, *see id*. at 9, but, like the Superior Court below, claims it is free from ambiguity and so the rule of lenity does not mandate a reading in appellant's favor. *See Giulian*, 111 A.3d at 204. The Commonwealth asserts the statute makes plain the Legislature's intention that a conviction for a summary offense, no matter how old, can never be expunged if there is another conviction within five years of that first offense; under such circumstances, "the opportunity to expunge the initial summary offense disappears upon a defendant's subsequent arrest or prosecution and the focus turns to the new, subsequent offense." Appellee's Brief at 10.

---

(…continued)
offenders "to have a fair shot at becoming contributing members of society." *Amicus Curiae* Brief at 5.

The Commonwealth rejects what it characterizes as appellant's "public policy" argument that the statute should be interpreted to give her "a break through expungement." *Id*. at 13. Instead, according to the Commonwealth, the humanitarian goals of the Legislature are achieved under the statute because a defendant can "rid[ ] herself of the stigma associated with a summary offense conviction if she can simply remain arrest-free for five years following that conviction." *Id*. at 14. Otherwise, the Commonwealth claims, a defendant receives a "volume discount" — she could "commit a years-long summary conviction crime-spree, end the spree, then apply for expungement" five years after the last offense. *Id*. at 17.

Finally, the Commonwealth argues expungement is left to the discretion of the trial court, even after both prongs of subsection (b)(3) are met, and while the court was thus within its discretion to expunge the 1998 offense, the Commonwealth posits there was no abuse of discretion in denial of expungement of the 1997 offense, where appellant was not eligible under subsection (b)(3). *Id*. at 17-19.

The question presented is one of statutory interpretation and is therefore a question of law; our standard of review is *de novo*, and our scope of review is plenary. *Fithian*, 961 A.2d at 71 n.4. We have stated "[j]udicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner. When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are set forth by statute." *Commonwealth v. Moto*, 23 A.3d 989, 993 (Pa. 2011), *citing, inter alia*, 18 Pa.C.S. §9122. At the same time, the permissive language of Section 9122(b) — providing "[c]riminal record history may be expunged" —

clearly vests discretion in the court to expunge a qualifying record. *See also Commonwealth v. Wallace*, 97 A.3d 310, 317 (Pa. 2014) (decision to grant or deny petition for expungement lies in sound discretion of trial court); *Commonwealth v. Wexler*, 431 A.2d 877, 879 (Pa. 1981) (in determining whether to grant expungement court must balance individual's right to be free from harm attendant to maintenance of arrest record against Commonwealth's interest in preserving such record).[3] Subsection (b)(3)(i) then includes the relevant qualifying language regarding timing: the individual seeking expungement must be "free of arrest or prosecution for five years following the conviction for that offense."

In matters involving statutory interpretation, the Statutory Construction Act directs courts to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. §1921(a). A statute's plain language generally provides the best indication of legislative intent. *See, e.g.*, *McGrory v. Dep't of Transp.*, 915 A.2d 1155, 1158 (Pa. 2007); *Commonwealth v. Gilmour Mfg. Co.*, 822 A.2d 676, 679 (Pa. 2003). In construing the language, however, and giving it effect, "we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear."

---

[3] It appears neither *Wallace* nor *Wexler* arose out of petitions for expungement filed pursuant to Section 9122; expungement was sought on different grounds. *Wallace*, 97 A.3d at 312-14 (inmate with "vast criminal history" of serious offenses sought expungement and other relief on generic due process grounds; no discussion of statutory grounds); *Wexler*, 431 A.2d at 879 (expungement petitions denied in January 1978, prior to 1979 adoption of statutory grounds for expungement). We cite *Wexler* because it sets forth useful factors for consideration by a court presented with a discretionary expungement request, and because it would appear the *Wexler* factors still have some force within the context of the statutory expungement scheme. *See, e.g., Moto*, 23 A.3d at 1002 (Saylor, J., dissenting, joined by Castille, C.J., and Orie Melvin, J.) ("[T]here is a colorable argument that the General Assembly intended to codify, rather than displace, this common law [expungement] scheme when it enacted Section 9122(a)(2) of the [Criminal History Record Information Act].").

*Roethlein v. Portnoff Law Assocs, Ltd.*, 81 A.3d 816, 822 (Pa. 2013), *citing Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1155 (Pa. 2003).  *Accord Commonwealth v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (statutory language must be read in context; in ascertaining legislative intent, every portion is to be read together with remaining language and construed with reference to statute as a whole).

The United States Supreme Court also takes a contextual approach in assessing the plain language of statutes and in determining if an ambiguity exists.  *See generally King v. Burwell*, __ U.S. __, __, 135 S.Ct. 2480, 2489 (2015) ("If the statutory language is plain, we must enforce it according to its terms.  But oftentimes the meaning — or ambiguity — of certain words or phrases may only become evident when placed in context.  So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citations omitted)); *Yates v. United States*, __ U.S. __, __, 135 S.Ct. 1074, 1081-82 (2015) ("'[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'  Ordinarily, a word's usage accords with its dictionary definition.  In law as in life, however, the same words, placed in different contexts, sometimes mean different things." (internal citations omitted)).

When a statute is ambiguous, we may go beyond the relevant texts and look to other considerations to discern legislative intent.  "Where statutory or regulatory language is ambiguous, this Court may resolve the ambiguity by considering, *inter alia*, the following: the occasion and necessity for the statute or regulation; the circumstances

under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute." *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 984 (Pa. 2016), *citing* 1 Pa.C.S. §1921(c).

The parties here argue Section 9122(b) is clear and unambiguous and that its plain terms support their respective readings – which are squarely opposed. When the parties read a statute in two different ways and the statutory language is reasonably capable of either construction, the language is ambiguous. *Id.* Unlike the Commonwealth, we believe this provision is, at a minimum, ambiguous. Appellant's textual points concerning the language of the statute are certainly plausible, so much so, in fact, the Superior Court resorted to adding words to the statute in order to dismiss appellant's argument. For example, the statute does not include the definite article "the" or the word "immediately" in order to circumscribe the time period referenced in Section 9122(b)(3)(i); the Superior Court itself supplied this limiting language to the statute by concluding a defendant must remain arrest-free for "the" five years "**immediately** following" the 1997 convictions. *Giulian*, 111 A.3d at 204 (emphasis in original). The Commonwealth likewise interpolates the word "immediately" in insisting the statute lacks ambiguity. This Court has cautioned, however, "although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say." *Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011), *quoting Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). Accordingly, we have stressed courts should not add, by interpretation, a requirement not included

by the General Assembly. *Johnson*, 26 A.3d at 1090, *citing Commonwealth v. Rieck Investment Corp.*, 213 A.2d 277, 282 (Pa. 1965).

We also credit appellant's view the General Assembly's use of the present perfect tense "has been free of arrest" supports that the statute does not refer to any particular five-year period; again, it is notable the Superior Court altered the text in narrowing the scope of the provision. *See Giulian*, 111 A.3d at 204 ("Therefore, as Appellant **was** not free of arrest or prosecution for **the** five years following the 1997 offense, we discern no error or abuse of discretion in the trial court's order denying her petition to expunge the 1997 offense.") (emphasis added).

For purposes of decision, we need not dispute that the contrary reading of the provision is also colorable as a textual matter, but it is notable the Superior Court and the Commonwealth easily demonstrate how much clearer the language could be if the provision actually included the terms "the" and "immediately" — or other terms of limitation. Finally, appellant successfully rebuts the Superior Court's concern her interpretation rendered the final phrase of the statute surplusage: the clause "following the conviction for that offense" reasonably bears the construction it merely establishes the possible start date for any five-year waiting period, *i.e.*, the period is simply **after** the **conviction** for the subject summary offense. Under this reading, there is no surplusage.

Our determination the statute is ambiguous is further supported by viewing the language in its context as part of the overall statutory scheme. *See, e.g.*, 1 Pa.C.S. §1921(a) (sections of statute should be read together and construed to give effect to all provisions); *Roethlein,* 81 A.3d at 822 (statutory words not to be interpreted in isolation

but read with reference to context in which they appear); *Mishoe*, 824 A.2d at 1155 (same). *See also Sturgeon v. Frost*, __ U.S. __, __, 136 S.Ct. 1061, 1070 (2016) ("Statutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"). It is undisputed Section 9122 is designed to afford the prospect of expungement relief to certain individuals under specified circumstances. The statute embraces three distinct approaches: situations where expungement must be granted, situations where it cannot be granted, and situations where expungement is possible in the discretion of the trial court. For example, subsection (a) describes situations where criminal record history **must** be expunged. 18 Pa.C.S. §9122(a) (criminal history record information shall be expunged when no disposition has been recorded within 18 months of arrest and it is certified no action is pending, or when a person convicted of underage drinking attains 21 years of age and has satisfied all terms and conditions of sentence).[4] Contrarily, subsection (b.1) describes situations where criminal history records can **never** be expunged. 18 Pa.C.S. §9122(b.1) (court shall not have authority to order expungement of arrest record where defendant was placed on Accelerated Rehabilitative Disposition for violation of certain enumerated offenses where victim is under 18 years of age). Finally, subsection (b) describes middle-ground situations where the court **may** grant expungement under certain conditions. 18 Pa.C.S. §9122(b). *Cf. Moto*, 23 A.3d at

---

[4] *See Commonwealth v. Furrer*, 48 A.3d 1279, 1282 (Pa. Super. 2012) (expungement of defendant's guilty-plea conviction of underage drinking was statutorily required where conditions were met; denial of expungement was abuse of discretion).

1000 (Saylor, J., dissenting) ("Expungement is discretionary when sought to purge criminal history record information generally (*i.e*., to wipe the slate clean)."). Here, the reading of the Superior Court and the Commonwealth takes the provision framed in discretionary language and carves out an exception where expungement can never be secured. The overall structure of the statute weighs against this narrowing construction.

Other statutory construction factors also weigh in favor of appellant's reading. Although the Superior Court affirmed the denial of expungement in this case, the panel nevertheless recognized the purpose of the expungement statute — the occasion and necessity for its enactment, the mischief to be remedied, and the object to be attained — is to ameliorate the "difficulties and hardships" that often result from an arrest record. *Giulian*, 111 A.3d at 203, *quoting Commonwealth v. Butler*, 672 A.2d 806, 808 (Pa. Super. 1996). "Expungement is a mechanism utilized to protect an individual's reputation from the stigma that accompanies an arrest record." *Wallace*, 97 A.3d at 319. Unlike the defendant in *Wallace*, who was denied expungement while still incarcerated for multiple, serious crimes, *see id*. at 322, appellant, whose minor offenses occurred long ago, when she was very young, and who has stayed arrest-free for almost two decades, is the kind of person who would benefit from the elimination of the perpetual stigma of her youthful misconduct.

*Amici* persuasively supplement appellant's argument in this regard by gathering and explaining current research and statistical information about the specific consequences experienced by individuals like appellant, with low-level offenses on their records, especially in this new era of easy online access to criminal records through inexpensive background checking services. *Amicus Curiae* Brief at 10, *citing, e.g.*,

NAT'L CENTER FOR STATE COURTS, PRIVACY/PUBLIC ACCESS TO STATE COURTS: STATE LINKS; Jenny Roberts, *Expunging America's Rap Sheet in the Information Age*, WASHINGTON COLLEGE OF LAW RESEARCH PAPER NO. 2015-3 (2015); *see id.* at 12 (in one survey, 11% of employers reported minor infraction would disqualify candidate from employment; in another study, researchers found existence of criminal record reduced likelihood of callback or job offer by nearly 50%); *see id*. at 11-18 (collecting information regarding barriers to employment, housing and education created by criminal records). The intended remedial impact of the expungement statute with respect to low-level offenses reveals obvious practical humanitarian objectives, which counsel us to construe the statutory language liberally in favor of appellant. *See, e.g., School Dist. of Phila.*, 117 A.3d at 242. [5]

Accordingly, in our judgment, appellant's construction of the statute is more persuasive. Moreover, the lower courts' contrary, stricter reading of the statute has yielded an unreasonable result: appellant's 1998 conviction has been expunged while the older ones remain intact and, by the lower courts' reasoning, those 1997 offenses can **never** be expunged, even if another sixteen, or fifty, arrest-free years elapse. We hold this is not a result the Legislature intended. Instead, we hold appellant is eligible

---

[5] The Court is not bound by the parties' agreement the statute is penal in nature and thus, under the rule of lenity, subject to strict construction against the Commonwealth and in favor of appellant. *See Commonwealth v. Spruill*, 80 A.3d 453, 460 (Pa. 2013) ("the parties' agreement on a legal issue does not control this Court's independent judgment") (citing cases). Justice Baer's concurrence correctly notes the difference in the standards applicable when a statute is deemed remedial or is deemed penal; Justice Baer also correctly notes that, for purposes of decision here, either conclusion would require a construction favoring appellant, and we therefore need not definitively resolve whether the higher standard ("strict construction") attending penal provisions applies.

for expungement of the criminal history record of her 1997 harassment and public drunkenness convictions.

Finally, regarding the Commonwealth's somewhat tautological argument that the trial court did not abuse its discretion because appellant was ineligible for expungement, we note the trial court did not purport to exercise its discretion; the court held instead appellant was not eligible for expungement as a matter of law pursuant to its reading of the statute. Trial Court Opinion, 7/16/14, slip op. at 4. Accordingly, we remand to the trial court for consideration of all factors relevant to the discretionary determination of whether appellant's summary offenses should be expunged. *See, e.g.*, *Wexler*, 431 A.2d at 879 (factors to consider in deciding whether to expunge criminal record include (1) strength of Commonwealth's case; (2) Commonwealth's reasons for wishing to retain records; (3) petitioner's age, criminal record, and employment history; (4) length of time between arrest and petition to expunge; and (5) adverse consequences resulting from denial).

Reversed and remanded for further proceedings. Jurisdiction relinquished.

Chief Justice Saylor and Justices Donohue and Wecht join the opinion.

Justice Baer files a concurring opinion which Justice Todd joins.

Justice Wecht files a concurring opinion.